## Richard Ash v. The People.

The ordinance of the city of Detroit prohibiting the keeping of stalls for the sale of fresh meats outside of the public markets, without license from the mayor, and requiring the payment of a license fee of five dollars, is a valid ordinance.

Such license fee is not a tax, but a reasonable compensation which the city demands from those who will not sell in the public markets, for the additional labor of its officers, and expense thereby imposed.

*Heard May 22d. Decided May 30th.*

Error to the Recorder's Court of Detroit.

*G. V. N. Lothrop,* for plaintiff in error:

The ordinance, we insist, is invalid.

*First.* Ordinances and by-laws must conform to the Constitution and general laws of the State:—*A. & A. on Corp.* 31; *Kennebec & P. R. Co. v. Kendall,* 31 *Me.* 470; *Dunham v. Trustees,* 5 *Cow.* 462.

*Second.* They must be within the powers of the corporation, and must be reasonable, or they are invalid:— *A. & A. on Corp.* 346; *Dunham v. Trustees,* 5 *Cow.* 462; *State v. Ferguson,* 33 *N. H.* 424.

*Third.* Whether reasonable or not is a matter of law: —*A. & A. on Corp.* 357; *Commonwealth v. Worcester,* 3 *Pick.* 462; *Commonwealth v. Gas Co.* 12 *Penn. St.* 318.

*Fourth.* The fee exacted under the ordinance is, in fact, a tax. The case finds that the sum exceeded the expenses of granting the license. It is, therefore, levied as a source of revenue. Where imposts are levied on callings for revenue purposes, it is both in form and substance taxation:—*Freeholders v. Barber,* 2 *Halst.* 64; *Kip v. Peterson,* 2 *Dutch.* 298; *Bennet v. Borough,* 31 *Penn. St.* 15; *Commonwealth v. Stodder,* 2 *Cush.* 562.

I deny, *first,* that under our Constitution a revenue can be raised in this way. All taxation for revenue must be upon property. *Art. XIV.* §§ 11, 12 *and* 13. Had taxation of callings been contemplated it would surely have been provided for.

*Second.* It is foreign to our whole system that revenue taxation should be exercised under "by-laws." This high governmental prerogative is regulated by law, and not by by-law. *Commonwealth v. Turner*, 1 *Cush.* 493.

*Third.* I do not think a true construction of the charter warrants the ordinance. A license does not properly imply the payment of a sum of money, though they are so frequently connected as to become associated in our habits of thought. The idea of license is founded on the facts, that there are callings in which the public have such an interest that no one shall exercise them without especial legal permission. This permission is license. This Court licenses attorneys. Should a revenue charge be added, there would be something more than license, viz. : taxation.

The Council may "license and regulate." The "license" is permission. There remains "regulation." But no one will contend that the fee exacted is *regulation.* What right, then, does the charter give to raise revenue under color of a license?

But, *fourth,* even if persons and callings, as well as property, are subject to taxation, still such taxation must be uniform. If the calling is taxed, it must be by law applicable to all those engaged in it in the city. The Legislature could not select out those in one ward, one street, or doing business inside or outside any particular locality. And if the Legislature could not, of course the city can not. See *Merriam v. New Orleans*, 14 *La. An.* 318.

This ordinance, taxing only those who do business outside the public markets, imposes an unequal and partial rule of taxation, and, therefore, is in violation of the Constitution.

*Fifth.* The ordinance is *unreasonable*, and, therefore, invalid. By-laws must be uniform, just, and equal. They are allowed only as a means of enabling corporations to make a fair, just, and judicious exercise of their powers,

If they violate this condition they are void. Now, viewing this ordinance as a mode of taxation, it is clearly unequal. On the other hand, viewing the ordinance as a rule to regulate a calling, it ought to be equal and uniform. It must embrace the whole calling. And the sum exacted for the license must not be an arbitrary burden, but in some way conduce to, or serve the system of regulation. If it were otherwise, the city could establish its own markets, holding the same on its own property, fix its rents at pleasure, and then, by refusing all licenses to private meat markets, or fixing exorbitant license rates, create and maintain an odious monopoly. And, if this ordinance is valid, the city of Detroit can do so to-day.

This ordinance, as it stands, is the arbitrary imposition of a burden upon a portion of a calling, without any common benefit:—*Austin v. Murray*, 16 *Pick.* 124; *Boston v. Shaw*, 1 *Met.* 130; *Mayor v. Winfred*, 8 *Humph.* 707; *Dunham v. Trustees*, 5 *Cow.* 462; *Buffalo v. Webster*, 10 *Wend.* 102.

*Wm. Gray*, for the People:

1. The ordinance in question is within the powers granted to the Common Council by the charter. Even if no other power were granted than the right to establish and regulate markets, the Council might lawfully pass an ordinance prohibiting the sale of meat elsewhere than in the public markets. Under any other construction the power to establish markets would be ineffectual.

But, taken together, the provisions of the charter above referred to confer upon the Council power to regulate the sale of meat at places other than the public markets, even to the extent of prohibition:—*Bush v. Seabury*, 8 *Johns.* 418; *Village of Buffalo v. Webster*, 10 *Wend.* 99; *City of Davenport v. Kelly*, 7 *Iowa*, 102; *Town of Winnsboro' v. Smart*, 11 *Rich.* 551; *City of Brooklyn v. Cleves, Hill & Denio*, 231; *City of St. Louis v. Jack-*

*son,* 25 *Mo.* 37; *Mayor, etc., of Mobile v. Yuille,* 3 *Ala.*
137; *Shelton v. Mayor of Mobile,* 30 *Ala.* 540.

2. And such an ordinance is not unreasonable, nor
against common right, nor in restraint of trade.  See in
addition to cases cited above, *Fazakerly v. Willshire,* 1
*Strange,* 463; *Wannel v. Chamberlain of London,* 1 *Strange,*
675; *King v. Chamberlain of London,* 3 *Burr.* 1322; *Price
v. Bartram, Cowp.* 269; *Nightingale, Petitioner,* 11 *Pick.* 168.

3. The grant of power to license and regulate includes
the power to require the payment of money for permis-
sion to sell elsewhere than in the public markets.  And
such an exaction is not a tax.  If, under the grant of
power to license and regulate, the Council may wholly
prohibit, they may partially prohibit, or, in other words,
grant permission to sell in private markets, upon such
terms and conditions as they may deem proper.  The
payment of money for a license may lawfully be made a
condition, as an effectual method of regulating the sale,
by confining it to such persons and places as the health
and good order of the city may require.

The words "to license," *ex vi termini,* import a grant
of authority to exact the payment of money as the con-
sideration for granting the license.

The authorities clearly establish a distinction between
a license fee and a tax: — *City of Boston v. Schaffer,* 9
*Pick.* 415; *City of Cincinnati v. Buckingham,* 10 *Ohio,*
257; *Same v. Bryson,* 15 *Ohio,* 625; *Smith v. City of
Madison,* 7 *Ind.* 86; *Merriam v. New Orleans,* 14 *La.
An.* 318.

Although in some of the cases just cited the right to
exact a license fee for the exercise of particular employ-
ments which occasion expense to the city, is placed upon
the ground that the persons engaged in such employments
should compensate the city for such expenses, we submit
that the power rests upon a broader ground.  As in the
case of *Cincinnati v. Buckingham,* an ordinance which

requires draymen and hackmen to pay a license fee, may be upheld upon the ground that persons exercising such employments should contribute to the expense of keeping streets in repair, etc. But there are various cases where the exercise of a particular employment occasions no expense to the city, but where the demand of a license fee may be justified under the general power to regulate, because such a requirement is a method of regulation. Thus, as in the case of *Boston v. Schaffer*, a license fee may be required of proprietors of theatrical entertainments, which are the occasion of no expense to the city, because the exaction of money may be adopted by the city authorities as a means of regulating employments which may become injurious to public morals, and which, therefore, under a general power to regulate, may be wholly prohibited, or permitted under restraints and conditions. And so, in the case at bar, the payment of a license fee by keepers of private markets is made a condition of the exercise of an employment which the Council have express power to regulate, not only in the public markets, but elsewhere; and this requirement of a fee is adopted as a means of regulation.

If this construction of the power given by the charter is correct, it is not restricted, in respect to the amount of the fee to be exacted, to the mere expense of issuing the license. Unquestionably the license fee demanded must not be unreasonable, but its amount is a matter of discretion with the Council.

MARTIN CH. J.:

The charter of the city of Detroit empowers the Common Council to erect and maintain market houses, establish markets and market places, &c., and to provide fully for the good government and regulation thereof; and to license and regulate butchers and the keepers of shops, stalls, booths or stands at markets or any other place in

the city, for the sale of any kind of meats, fish, poultry, &c.; and to authorize the Mayor to grant such license, &c., and to prescribe the sum of money to be paid .there-for into the city treasury. The city has established a market, and an ordinance exists prohibiting persons from keeping a meat shop or stand outside such market without a license from the Mayor, and upon terms of paying into the city treasury five dollars, and executing a bond conditioned that they will faithfully observe the provisions of the ordinance.

Ash keeps a meat shop outside the market, without a license; and alleges and insists that he has a right to do so, upon the ground that the ordinance is unconstitutional: 1st: In requiring a license fee from persons selling meats outside the market, and 2nd: In requiring a fee beyond the sum necessary to defray the expense of making and registering the license, and which it is claimed is in fact a tax.

The power to license and regulate the vending of meats and vegetables is not denied, nor its necessity questioned. The health of the city demands that it should exist. If the power to regulate exists, then the city has the power to prescribe the limits within which the trade or calling shall be carried on without license. If carried on elsewhere the city may require the license and bond, for protection and regulation; and may require such reasonable fee as will compensate either partially or fully for the additional expense of inspection and regulation thereby incurred. The market being under the immediate supervision of the city officers, no extraordinary expenses need be incurred, and if there were, the rent of the stalls is considered a compensation. An ordinance of this kind does not in fact operate unequally, and is not against common right or in restraint of trade.

Nor is this exaction of five dollars a tax. It is but a reasonable compensation which the city demands from those

who will not sell in the public market, for the additional labor of officers, and expense thereby imposed. If it be conceded that the city may demand a sum sufficient to defray the expense of making out the license, it is difficult to conceive why it may not also demand enough to pay all the expense attending the supervision of the trade at the place licensed. As we regard the sum exacted as a reasonable fee for the indemnity of the city, and not as in any sense a tax, we do not deem it expedient to discuss the further question of the extent of the power of the city to exact license fees, or the limits of such power.

The judgment must be affirmed.

Manning and Christiancy JJ. concurred.

Campbell J. *dissenting.*

I have been inclined to arrive at the same conclusion as my brethren, as the city regulation is a very reasonable one. But upon the authorities I am satisfied it is an exercise of the taxing power, which can not under our Constitution be exercised by such specific charges.

*Judgment affirmed.*