THE DENVER CITY RAILWAY COMPANY, PLAINTIFF IN ERROR, v. THE CITY OF DENVER, DEFENDANT IN ERROR.

1. FINDINGS OF FACT MUST BE UPON EVIDENCE.

The convictions of the judge based upon personal observations, cannot take the place of competent evidence.

2. CONSTITUTIONAL LAW—TAXATION.

The Constitution (art. 10, sec. 3) requires uniformity of taxation upon valuation.

3. CONSTITUTIONAL CONSTRUCTION.

A rule or mode of taxation of property having been prescribed by the Constitution, all others are thereby excluded.

4. MUNICIPAL POWERS—LICENSE, FEES, ETC.

A municipal authority cannot, under its power to license, regulate and tax an occupation or business, tax the property engaged in such business.

5. MUNICIPAL DISCRETION.

When a city is vested with power to impose license fees, without express limitation as to the amount thereof, much is left to municipal discretion, and its exercise will not be interfered with by the courts unless it is abused. *Semble,* an injunction should never be issued against a municipal corporation unless the right and power are free. from doubt.

6. JURISDICTION OF THE COURT OF APPEALS.

The court of appeals is not a court of final jurisdiction when constitutional questions are involved. Its judgment upon such questions is subject to review by the supreme court.

*Error to the District Court of Arapahoe County.*

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for plaintiff in error.

Mr. F. A. WILLIAMS and Mr. GREELEY W. WHITFORD, for defendant in error.

REED, J., delivered the opinion of the court.

Suit was brought in October, 1889, against the city of Denver by the plaintiff in error, a corporation originally incorporated by an act of the territorial legislature in 1867, under the name of the Denver City Horse Railroad Company. In 1872 by an act of the territorial legislature the name was changed to Denver City Railway Company, the corporation retaining all the powers and privileges formerly possessed. It constructed various lines of street railway and operated a large number of horse cars upon them.

It is alleged in the complaint that by the charter the city of Denver was, among other powers, given the power by an act of the general assembly of March 16th, 1885, "exclusively, to license, regulate and tax any or all lawful occupations, business places, amusements, and may fix the rate and charges for the carriage of persons and property within the city by licensed hackmen, omnibuses, carriagemen, draymen and expressmen."

By an ordinance of the city passed in 1886 it was declared unlawful to operate street cars without having ob-

tained a license; by another section, the license for each street car operated was fixed at $10 per annum. In the year 1888, the license fee was raised by a city ordinance to $25 per annum for each car. It is further alleged that prior to the passage of the ordinance of 1888, plaintiff had each year paid the license fee of $10, and that since the ordinance of 1888, it has at all times been willing and still was willing at the time of bringing the suit to pay a license fee of $10, but refused to pay the license fee of $25; that $10 was ample to pay the cost of license, police protection and supervision, and that all in excess of that amount was a tax upon the property, void and illegal. That the city was about to enforce the ordinance and collect $25 upon each car, and arrest the drivers and operators of each car unless the same was paid; and asking an injunction to restrain the collection, arrests, etc. An answer was filed and the case tried to the court without a jury.

The right to license the cars and fix the price of such license at an amount sufficient to cover the expense of police supervision is conceded, consequently no question is raised in regard to the legality of the ordinance under which the right is asserted. The question in the first instance is purely one of fact, whether the $25, the amount charged, was excessive. The abstract presents no evidence whatever, nor are we informed that any was taken. The case appears to have been twice heard by the court, and its finding upon each hearing set out at length in the abstract furnished; the finding of fact on each hearing being the same, but the finding of law, in the second instance, differing from that in the first. In both the court found a $10 license insufficient, and a $25 fee excessive, and fixed, as a compromise, $17.50 as the proper sum to be exacted. Plaintiff adopts the finding of fact in so far as it declares $25 to be excessive, consequently does not find it necessary to have that end of the case reviewed, but asks that the finding of law be reviewed. No cross errors are assigned.

There is nothing in the brief or argument of counsel for

plaintiff to show that it has adopted or is willing to adopt the $17.50 as the proper charge, nor is there anything to show that the defendant is not willing to accept the $17.50, but it not having been accepted and acted upon by either, the presumption is that it was rejected by both, and plaintiff is in the position of adopting the finding that $25 was excessive, without adopting the finding that the sum of $17.50 was correct, but still adhering to the allegation that $10 was sufficient, while attempting to avail itself of the finding that $25 was excessive to the amount of $7.50. This seems an anomalous and unprecedented manner of presenting a cause for review.

In the first opinion of the court it is said, " But I have been conversant with the lines of railroad and cars of the plaintiff in this city for a number of years, and I know of my own knowledge, of which, of course, I can't divest myself, that the police regulation cannot, from the testimony offered, make it necessary for the payment of $25 on each of these cars," etc.  This is rather a poor basis upon which to review the finding of fact.  It is needless to say that the convictions of the court, from personal observation, cannot take the place of competent evidence.  In our opinion the finding of law is so absolutely dependent upon the finding of fact, the law so dependent upon the fact, that we can hardly review one without the other.

It is urged by counsel of defendant that under its charter it has the right not only to tax street cars, by license, for sufficient to cover the cost of police control and supervision, but also by *license fee*, to tax the business of running street railroad cars for the purpose of municipal revenue.  This contention is adopted by the court, and after having found $25 excessive to the extent of $7.50 in both findings, in the latter holds:

" First.—That the license for police regulation does not, under the testimony offered, justify a greater license than $17.50 per car, as heretofore found, but that the wording of the city charter gives the city the right to tax as well as to

license for police regulation, and that the charter of the plaintiff company approved January 10th, 1867, in no way exempts it from paying such tax.

"Second.—That the city council, having the power to assess said tax at the sum of $25 per car, and having elected to do so, that the same is legal."

This finding cannot be sustained. The right to tax a "business" by license cannot be extended so as to cover a tax levied by license upon property used in the business. An extended discussion on this proposition is unnecessary. The assumption is in direct conflict with constitutional provisions and prohibition. Street cars, horses and all personalty connected with them, belonging to the corporation are, by the operation of general laws, subjected to taxation for state, county and municipal purposes, upon valuation and upon a fixed basis, like property used in the prosecution of other business.

It is declared in the state constitution, art. 10 sec. 3, "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws which shall prescribe such regulations *as shall secure a just valuation for taxation of all property, real and personal.*" The assumed right to discriminate, to double tax the same property, first, generally upon valuation for purposes of revenue ; second, to tax, under the power to license, without valuation, at the will and caprice of the city council for purposes of revenue, cannot be sustained. It is in direct conflict with the constitution which requires uniformity of taxation *upon valuation.* If the contention is to prevail, it might result in prohibiting a legitimate business, and confiscation, by discriminating, and double taxation of the personal property used in the prosecution of the business.

In *Palmer v. Way*, 6 Colo. 110, it is said: "A certain mode being prescribed, all other modes are excluded, and any act of the legislature assuming to authorize the levy and collection of taxes *by a mode that ignores the principles of valua-*

*tion and uniformity, is null and void."* *Wilson v. Chilcott,* 12 Colo. 602; *People ex rel. v. Henderson,* 12 Colo. 371; *Carlisle v. Pullman Co.,* 8 Colo. 327.

We think the court erred in finding the law to be, that the defendant could by way of license, tax the property of plaintiff for revenue as well as for police supervision, and that this finding must be reversed. An injunction was asked restraining the city from in any way proceeding to collect more than $10. It was also asked that the ordinance fixing license at $25 be declared void.

In the absence of evidence and established facts, the ordinance, as above stated, cannot be declared void. Whether or not the license fee was exorbitant we have no means of judging. The fee cannot be fixed accurately. The duty the city government owes the people, and its liabilities for damage for failure in proper supervision, are factors to be considered, and require it to put the fee at a figure amply sufficient to cover liability and pay for careful supervision. What the actual cost of supervision was, was a matter peculiarly within the knowledge of the city government. The city council is a deliberative, administrative body, chosen from the people, legislating under the charter upon subjects with which they are supposed to be familiar. This court cannot interpose its opinion and guess at a cost of administration, nor take the judgment of the court below, as against the judgment of the city council. The city council, by ordinance, estimated the cost and responsibility on each car at $25—appellant insists upon $10—the court compromises and fixes it at $17.50, which finding is not adopted. It is true there is a discrepancy of $7.50, that difference between the judgment of the court and that of the city. Which is right, we cannot say.

In Cooley on Taxation (2d ed.), 598, it is said: " But the limitation of the license fee to the necessary expenses will still leave a considerable field for the exercise of discretion, where the amount of the fee is to be determined."

In *Van Baalen v. People,* 40 Mich. 258, it is said: " The

question as to the reasonableness of the amount of the license fee will not admit of nice calculations, and it would be futile to require anything of the kind." Courts will not review municipal discretion in imposing license fees, where it has not been abused in this instance.     In many cities double the amount has been held not to be excessive. *Allerton v. Chicago*, 9 Biss. (U. S. C. C.) 552; *Railway Co. v. Phila.*, 58 Pa. St. 119; *Railway Co. v. Phila.*, 101 U. S. 532.

The general rule appears to be that courts will not interfere with the discretion of municipal bodies unless there is an evident abuse of power. · Plaintiff alleges an abuse of $15; the court finds $7.50. Should we adopt the court's finding, plaintiff could not obtain the relief asked. In our view, the case presented is peculiar—there is a correct judgment denying the injunction and sustaining the ordinance, but based upon errors of law. It is very doubtful whether the wrong, if there is one, can be reached by injunction or remedied in a court of equity. The authorities seem to concur in saying, that a writ of injunction should never be issued against a municipal corporation unless the right and power are free from doubt. 2 High on Injunc. §§ 1240, 1244; *Poyer v. Des Plaines*, 123 Ill. 111; *West v. Mayor of N. Y.*, 10 Paige, 539; *Eldridge v. Hill*, 2 Johns. Ch. (N. Y.) 281.

It is apparent, that under the case as made in the complaint, a court of equity was powerless to declare the ordinance void and enjoin proceedings for its enforcement.     .

The suit should be dismissed.

*Reversed.*

### ON APPLICATION FOR REHEARING.

REED J., delivered the opinion of the court.

Both parties to the controversy have filed petitions and elaborate briefs and arguments asking a rehearing.

The application of plaintiff is based, principally, upon the fact that the court below found as a matter of fact that

$17.50 was an adequate license fee, and that $25 was excessive, and that no exception having been taken, such finding was conclusive upon this court. Had there been any authoritative finding of an important fact involved, it might be correct. The fact incidentally found and presented as a sort of compromise in no way affects the result to be reached. The right to collect any license fee depends upon the validity of the ordinance authorizing it, and the amount of the fee is also dependent upon the ordinance. There were two ordinances, the earlier one providing for a fee of $10 upon each car, the subsequent, for $25. The right to demand and collect a fee is conceded by the plaintiff, but it contends that $10 is enough and $25 is excessive. It adopts, and wishes the court to adopt, such findings only for the purpose of abrogating and invalidating the latter ordinance of $25, and relegating it to the $10 ordinance, not adopting the finding as a basis of payment. Had the court found and decreed the $25 ordinance void, by reason of excessive charges, another question would have been presented ; but while finding $25 excessive and $17.50 sufficient, it in the same judgment finds " That the city council having the power to assess said tax at the sum of $25 per car, and having elected to do so, that the same is legal." Having found that the fee of $25 was legal, it is unimportant upon what evidence, if any, it found $17.50 sufficient. We do not see how, without adopting it as a basis of payment, it can avail the plaintiff, or how it is regarded by the court, becomes important. To adopt the finding of fact as urged would abrogate both ordinances, one for being excessive, the other for not being sufficient.

Without more data or evidence, we do not feel justified in interfering with the functions of the city council in matters peculiarly within their knowledge, nor shall we do so under any circumstances, unless its action is clearly flagrant and oppressive. In this instance the limit attempted to be established is so finely drawn, it must be apparent that it was more in the spirit of an attempt to compromise or arbitrate than an authoritative judicial opinion.

The petition of plaintiff in error must be denied.

The petition of defendant in error must also be denied.

This court having found the ordinance valid and having asserted the right of the city, under the ordinances, by virtue of its police power, to collect a license fee of $25, does not consider it obligatory upon it to go further and decide questions not involved. Nor are we disposed to recede from the construction of the constitution as stated in the opinion, nor to adopt the conclusions of the district court and the contention of counsel, that the property of the corporation can be doubly taxed for revenue; first, upon its assessed value, and second, upon license fees. We think that to permit it would not only be inequitable but in direct conflict with the constitution.

We do not regard the late decision of the supreme court in *Denver City v. Knowles*, handed down since the opinion in this case was written, as in any way controlling this case or in conflict with it; though the subjects are germane, both being in regard to the power and constitutional limits of the right to tax, the questions are in no way identical, and the basis of each and the right to tax depend upon principles of law widely different in their origin and application.

This is not a court of final jurisdiction when constitutional questions are involved. The supreme court will undoubtedly be required to pass upon the constitutional question, and as the judgment of this court is only intermediate, it can only be a basis to enable parties to obtain a review, which we will gladly facilitate.

*Denied.*